UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-542

| REMI HOLDINGS, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| WILLIAM THOMAS NEATHAMER, III, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss for Lack of Jurisdiction, filed by Defendant Melissa Hughes. (Doc. No. 6).

I.     **BACKGROUND**

Plaintiff Remi Holdings, LLC filed this action in Mecklenburg County, North Carolina, on September 18, 2019, against William Thomas Neathamer, III, Brian Gibbs, Melissa Hughes, and Thomas and Associates, LLC ("T & A"). T & A is located in Tennessee, and all of the individual Defendants reside in Tennessee. Defendant Neathamer was at all relevant times T & A's owner and president, and Defendant Gibbs was at all relevant times a member of T & A. The movant Defendant Melissa Hughes was a part-time employee of T & A at all relevant times. She no longer works at T & A.

Plaintiff alleges that Defendant T & A entered into an agreement with Plaintiff in which Defendant agreed to market and sell Plaintiff's equipment maintenance services on Plaintiff's behalf. Plaintiff alleges that Defendants thereafter breached this agreement by, essentially, joining with National Imaging Resources ("NIR") to create a competitor to Plaintiff and use Plaintiff as an unauthorized underwriter to this competitor. Plaintiff alleges that Defendants

1

convinced Plaintiff to enter into an agreement with NIR with the fraudulent purpose of deceiving Plaintiff into providing Defendants with access to Plaintiff's vendors and confidential and proprietary trade secrets. Plaintiff brings claims against all Defendants for misappropriation of trade secrets, tortious interference with contract, tortious interference with prospective economic advantage, civil conspiracy, and unfair and deceptive trade practices.

On October 4, 2019, Plaintiff filed an Amended Complaint, changing Plaintiff's name from The Remi Group, LLC to Remi Holdings, LLC. See (Doc. No. 1–2 at p. 46: First Amended Compl.). On October 17, 2019, Defendants removed this action to this Court. Defendant Hughes filed the pending motion to dismiss on November 22, 2019, arguing that this Court lacks personal jurisdiction over her because she does not have sufficient contacts with North Carolina to be haled into court here. On February 12, 2020, the Court stayed the motion to dismiss to allow the parties to conduct limited jurisdictional discovery. (Doc. No. 24). Following the entry of that Order, the parties exchanged written discovery, Plaintiff deposed Hughes, and Hughes deposed Plaintiff's owner Brent Howison. The parties have completed jurisdictional discovery, and they have submitted supplemental memoranda. (Doc. Nos. 29, 30).

## II. STANDARD OF REVIEW

Under Rule 12(b)(1), the defendant may file a motion to dismiss based on a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Where a defendant files such motion, the plaintiff bears the burden to prove that subject matter jurisdiction exists. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Additionally, a motion to dismiss for lack of subject matter jurisdiction may be brought on the grounds that the complaint fails to allege sufficient facts to invoke the court's jurisdiction and, when made on those grounds, all the facts asserted in the complaint are presumed to be true. Id. Plaintiff bears the burden of establishing the existence of

the jurisdiction by a preponderance of the evidence.  See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005).

**III.     DISCUSSION**

Defendant Hughes, a Tennessee resident and former part-time employee of Defendant T & A, argues that this Court does not have personal jurisdiction over her and she should therefore be dismissed from this action.  The exercise of personal jurisdiction over a nonresident defendant is proper when (1) there is a basis for jurisdiction under North Carolina's long-arm statute, and (2) the exercise of personal jurisdiction complies with due process.  Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011).  Courts construe North Carolina's long-arm statute to be coextensive with due process, such that the two-part test collapses into the single inquiry of "whether the non-resident defendant has such 'minimum contacts' with the forum state that exercising jurisdiction over it does not offend 'traditional notions of fair play and substantial justice.'"  Id. (quoting Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)).  In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be exercised specifically or generally.  Here, Plaintiff does not contend that this Court can exercise general personal jurisdiction against Hughes, and the parties appear to agree that Hughes' activities in North Carolina have not been continuous and systematic such that the court may exercise general personal jurisdiction over her.  As detailed in her sworn affidavit, Hughes owns no property in North Carolina, does not operate a business in North Carolina, has no agent in North Carolina, and has no bank accounts in North Carolina; she

3

lives and works exclusively in Tennessee; and her only contact with North Carolina is that she was born in North Carolina and sometimes visits family in North Carolina. These attenuated contacts are insufficient to render Hughes "essentially at home" in North Carolina for purposes of general personal jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 563 U.S. 914, 919 (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 317 (1945)).

The Court next addresses whether it may assert specific jurisdiction over Hughes. In determining whether specific jurisdiction exists, courts consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711–12 (4th Cir. 2002) (internal quotations omitted). To establish specific jurisdiction, the plaintiff must show "a sufficient nexus between [the] defendants' contact with the forum state and the nature of the claims asserted." WLD, LLC v. Watkins, 454 F. Supp. 2d 426, 432 (M.D.N.C. 2006). A defendant has purposefully availed herself of the privilege of conducting business in the forum state "[i]f the defendant has created a 'substantial connection' to the forum." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

Here, Plaintiff makes numerous allegations in the Amended Complaint about Defendant Hughes in order to support the exercise of jurisdiction over her. In response, however, Hughes has filed a sworn affidavit rebutting Plaintiff's factual allegations that could support the exercise of personal jurisdiction over Hughes in a North Carolina court. (Hughes Aff., Doc. No. 6-2 at ¶¶

4

10–12). Specifically, Hughes states that she has been a resident of Tennessee for the past three years and for her entire employment with T & A. (Id. at ¶¶ 3, 14). Hughes' only contacts with North Carolina are purely personal, as she was born in North Carolina and travels to North Carolina at times to visit family. (Id. at ¶ 8). She does not own property in North Carolina, does not operate a business in North Carolina, and does not have a bank account in North Carolina. (Id. at ¶¶ 4, 5, 6, 7, 8). Furthermore, despite Plaintiff's allegations to the contrary, Hughes states that she has never been a member, officer, or owner of T & A.[1] (Id. at ¶ 9). She worked as a part-time assistant at T & A from early 2018 until July 31, 2019, for $12 per hour, and her duties included paying bills, running errands, and conducting administrative matters such as booking flights and travel arrangements. (Id. at ¶¶ 10, 13). Her duties with T & A have never involved sales, she has never been a sales assistant, and she has never traveled to North Carolina for reasons related to her part-time employment with T & A. (Id. at ¶ 8, 11).

Hughes further states that, other than strictly administrative matters, she has never had any communications with any officer or employee of Plaintiff. (Id. at ¶ 15). Hughes can only recall two conversations with any Plaintiff's employees. (Id.). The first communication was with Plaintiff's IT officer, Ben Meta, about an issue Neathamer was having with his computer. (Id.). The second communication was with someone named "Jennifer," whose last name Hughes cannot recall, regarding supplies Neathamer would need for a conference. (Id.). Hughes' only communications with any persons employed by or representing accounts or potential accounts

---

[1] Plaintiff's Amended Complaint alleges that alter-ego liability or corporate veil-piercing theories support exercising personal jurisdiction over Hughes and the other individual Defendants. Plaintiff alleges that Hughes was an "owner" and "integral member" of Defendant T & A who, along with the other individual Defendants, "dominated and controlled" Defendant T & A. Plaintiff's allegations concerning veil piercing are conclusory, nonspecific, and directly contradicted by Hughes' own sworn affidavit.

5

developed by T & A for Defendant were for strictly administrative reasons, such as communicating about travel arrangements. (Id. at ¶¶ 16, 17).

Hughes also asserts that, contrary to Plaintiff's allegations forming the basis for their claims, she never directed invoices to vendors to be changed from Remi-captioned invoices to NIR-captioned invoices; she never marked up Plaintiff's price quotes in order to profit from the markup without Plaintiff's knowledge or authorization; she never contacted or solicited Plaintiff's customers or vendors; and she never communicated or attempted to communicate with any entity named in the email attached to the Plaintiff's Amended Complaint as Exhibit C. (Id. at ¶¶ 18, 19, 20, 22).

Plaintiff's only response to Hughes' rebuttal of Plaintiff's conclusory factual allegations relies on the Declaration of Plaintiff's Director of Infrastructure and Security, Matt Selmer, in which he stated that Plaintiff had provided Hughes with an email address hosted by Plaintiff's server in North Carolina until it was moved to the "cloud," without specifying in which state that cloud server was located. (Selmer Decl., Doc. No. 11–1 at ¶¶ 3, 6). Selmer's Declaration alleged that Hughes had received and sent thousands of emails through the email address that Plaintiff had provided her but did not discuss the substance of any of those emails. (Id.). Likewise, in its response to the motion to dismiss, Plaintiff has not explained how any of those emails was related to the activity giving rise to its claims against Defendants.

Plaintiff also failed, in its response to Hughes' interrogatories, to provide facts to support its position that this Court may exercise personal jurisdiction over Hughes.[2] Plaintiff responded

---

[2] Plaintiff explained in its response that its investigation was ongoing and that it reserved the right to supplement the response should additional information become known to it, but Plaintiff never supplemented its response. Furthermore, after Hughes' deposition was taken on April 17, 2020, Plaintiff's President Brent Howison testified in his own deposition that he was aware of no further facts responsive to the above interrogatory. (Doc. No. 30-2, Howison Dep. 16:6–10).

6

to interrogatory number three of Hughes's interrogatories by identifying its Chief Revenue Officer, Dana Upshaw, as someone who had interacted with Hughes and who had conversations with her "regarding Mr. Neathamer's schedule and requests surrounding the mechanics of the Thomas & Associates agreement with Remi, such as reporting." (Doc. No. 30-1). When questioned about this response, Howison said he did not know where he obtained that information. (Doc. No. 30-2: Howison Dep. 21:10–20). When questioned further about what he meant by the response, Howison gave vague, speculative responses which he could not testify were given to him by anyone with first-hand knowledge. (Id. at 21:10–24:3).

In sum, Plaintiff has not carried its burden of establishing that Hughes purposefully availed herself of anything other than having part-time employment with a company that was connected to Plaintiff. Plaintiff wholly fails to establish any nexus between Hughes' administrative activities and the threadbare, conclusory claims it asserted against her in its Amended Complaint, which she has rebutted through her own sworn affidavit. Plaintiff merely relies on the sheer quantity of emails sent and received by Hughes while she was employed part-time by Defendant T & A without connecting a single one of Hughes's communications to any wrongful conduct on her part.[3]

In any event, to assert personal jurisdiction over Hughes would be constitutionally unreasonable. The factors a court considers in weighing constitutional "reasonableness" include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;

---

[3] Indeed, the only allegation of a specific act by Hughes is in Paragraph 30 of Plaintiff's Amended Complaint, wherein Plaintiff alleges that Defendant Neathamer sent Hughes and himself an email with the statement "deconstruct deals" and a list of names. This email does not direct Hughes to take any action, and Plaintiff does not allege that Hughes took any action as a result of this email.

7

(4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.  See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009).  "More generally, [the] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent."  Nolan, 259 F.3d at 217 (internal quotation marks omitted).  Here, Hughes, a Tennessee resident, whose former, part-time employment with T & A consisted of administrative duties, is not a corporation with large resources, and making her defend the claims in North Carolina would be so gravely difficult and inconvenient that she would be unfairly and severely disadvantaged in comparison to Plaintiff.   For these reasons, the Court will grant Hughes' motion to dismiss.

**IT IS THEREFORE ORDERED** that:

(1) Defendant's Motion to Dismiss, (Doc. No. 6), is **GRANTED**, and Defendant Hughes is terminated from this action.

Signed: June 13, 2020

Max O. Cogburn Jr
United States District Judge